USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/2020

-------------------------------------------------------------------X

BENEDICT P. MORELLI and THE MORELLI  :
LAW FIRM, PLLC, f/k/a Morelli Ratner, PC  :
 :
        Plaintiffs,  :    1:19-cv-10707-GHW
   -against-  :
 :    MEMORANDUM OPINION
JEREMY ALTERS,  :    AND ORDER
 :
        Defendant.  :

-------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

  When Plaintiff Benedict P. Morelli and Defendant Jeremy Alters met, each believed the other to be an incredibly successful class action lawyer. Morelli agreed to loan Alters millions of dollars in exchange for tens of millions of dollars in fees that Alters allegedly represented to Morelli that he was due because of his work on various class action cases. And eventually, the pair agreed to become partners, with Alters receiving a multi-million dollar salary from Morelli, again backed by Alters' expected fees. The two executed three contracts that formalized this arrangement individually and on behalf of their respective law firms. But these agreements, and Morelli's and Alters' erstwhile friendship, were allegedly founded on lies. Plaintiffs allege that Alters had already promised the fees that he was due from the class action cases to other parties, so Morelli could never have collected what Alters promised to pay him. Thus, Plaintiffs filed this action alleging that Alters defrauded them.

  Because a motion to dismiss for lack of subject matter jurisdiction is not a proper method to enforce an agreement to arbitrate, Alters' motion to dismiss for lack of subject matter jurisdiction is DENIED. However, the Court concludes that the 2015 agreement between the parties contains a valid agreement to arbitrate disputes between Morelli and Alters. Because Alters has not petitioned to compel arbitration, the Court will not compel arbitration of Morelli's claims at this time. Because

the 2018 agreement between Morelli and Alters does not contain an arbitration provision, Alters'

motion to dismiss Plaintiffs' claim arising under that agreement is DENIED. And Alters' motion to

dismiss based on improper venue and his motion to strike are likewise DENIED.

## I. BACKGROUND

### A. Facts[1]

Morelli is the founding partner of Morelli Law. Compl. ¶ 19. In 2011, Morelli met

Defendant Jeremy Alters, who was "then a well-known South Florida class action litigator." *Id.* ¶ 20.

Alters allegedly told Morelli that "he was in need of financing" because he had not yet received fees

he had earned by representing plaintiffs in certain class action cases. *Id.* Therefore, Alters and

Morelli agreed that Morelli would extend Alters a loan, which Alters would repay when he received

fees due him from the proceeds of certain class action settlements. *Id.* ¶ 21. At the same time,

Plaintiffs allege that Alters was being investigated by the Florida State Bar ("FSB") "in connection

with Alters' improper and unethical use of client funds in Alters' firm's escrow account." *Id.* ¶ 22.

However, Alters did not disclose "the FSB's investigation to Morelli while they were fashioning their

original 2011 financing deal." *Id.* When Morelli learned of this investigation in 2013, Alters

allegedly "falsely assured Morelli that there was no truth to the allegations of Alters' unethical

conduct." *Id.* ¶ 24. Because Morelli believed these denials, he "paid the bills for Alters' personal

counsel in the FSB investigation" as "Alters said he did not then have the funds to pay for those

fees." *Id.*

In 2014, Morelli and Alters decided to found a New York law firm together called Morelli

Alters Ratner LLP. *Id.* ¶ 25. The complaint alleges that "[t]o induce Morelli into a 'partnership'

relationship, Alters consistently promised Morelli" both orally and in writing "that Alters had already

earned and would receive through judicially-approved settlement fees of tens of millions of dollars

---

[1] These facts are drawn from the complaint ("Compl."), Dkt No. 19.

in" class actions and other cases "and that Alters would share fifty percent of those already earned legal fees with Morelli[.]" *Id.* ¶¶ 26-27. In exchange for a portion of the class action fees that Alters allegedly represented he would soon receive, "Morelli agreed to provide Alters with a salary and to pick up other costs and expenses to fund Alters' practice[.]" *Id.* ¶ 27.

In 2015, the FSB investigation became more widely known. *Id.* ¶ 28. As a result, Morelli expressed concern to Alters that the investigation might adversely affect Morelli's share of the class action attorneys' fees that Alters had promised Morrelli. *Id.* "Alters again falsely represented to Morelli that there was no basis for the FSB's investigation into Alters and that he would be cleared of all charges." *Id.* However, Morrelli Alters Ratner LLP had trouble "securing financing because lenders regarded Alters as a significant credit risk for the repayment of loans to the New York firm." *Id.* ¶ 30. Consequently, in March 2015, Alters allegedly agreed in writing to relinquish his partnership interest in Morelli Alters Ratner LLP and "continue working for the firm strictly as a salaried employee[.]" *Id.* ¶ 31.

## 1. The 2015 Agreement

In August 2015, Alters orally "represented to Morelli that Alters had earned and was entitled to receive at least $20 million dollars in counsel fees in multidistrict litigations of Chinese-manufactured drywall products (the 'Chinese Drywall Cases') and at least another $20 million in fees from cases against Bank of America arising from improprieties regarding its checking account overdraft fees (the 'Bank Overdraft Cases')" in addition to other fees. *Id.* ¶¶ 32-33. The complaint alleges that Alters told Morelli that he would pay "Morelli half of those fees as consideration for Morelli's agreement to" make a further loan to Alters and to "repay certain of Alters' loan obligations to third parties." *Id.* ¶ 33.

Allegedly based on these representations, Alters proposed that he and Morelli enter into an agreement under which "Alters would give Morelli 50% of Alters' net fees from those cases, which

Alters represented had a value to Morelli of not less than $20 million." *Id.* ¶ 34. Alters told Morelli that Morelli would receive his portion of those fees by the beginning of 2016. *Id.*

In addition to these legal fees, Alters allegedly also orally represented that Alters "owned a five percent interest in a company known as ezVerify/Validate ('ezVerify')" which was being sold for $2 billion. *Id.* ¶ 35. Alters' share of this sale was thus to be $100 million. *Id.* Alters promised Morelli that when the sale was completed, Alters would pay Morelli "50% of his net recovery[.]" *Id.* Hence, Alters allegedly promised Morelli that he would receive at least $70 million. *Id.* ¶ 36. The complaint alleges that Alters also assured Morelli that Alters "had not promised or agreed to give any portion of the expected $40 million in fees he earned from the Chinese Drywall Cases and Bank Overdraft Cases to any other person or entity." *Id.*

Thus, in August 2015, Morelli and Alters executed an agreement (the "2015 Agreement"). *Id.* ¶¶ 38, 40; *see* 2015 Agreement, Ex. A to Compl., Dkt No. 19-1. Morelli executed the 2015 Agreement personally and on behalf of "Morelli Ratner, PC" and "Morelli Alters Ratner Law Firm LLP" as to Sections I and II. Compl. ¶ 40. In the 2015 Agreement, Alters granted Morelli a fifty percent interest in all of Alters' class action attorneys' fees payments due in the Chinese Drywall Cases and Bank Overdraft Cases, fifty percent of Alters' net recovery from the sale of his interest in ezVerify, and his partnership interest in Morelli Alters Ratner LLP. *Id.* ¶ 38. In exchange, Morelli agreed to pay Alters a bi-weekly salary for eight years which totaled $15,560,008 in the aggregate and $4,577,820.91 for repayment of a loan Alters incurred for the firm. *Id.*

Section 7 of the 2015 Agreement ("Section 7") is a mediation and arbitration clause that states "[t]he parties to this agreement agree to mediate any disputes with a mutually agreed upon mediator. If mediation fails to resolve any dispute, the parties agree to arbitrate with a mutually agreed arbitrator or arbitrators." 2015 Agreement at 10, § VII. The complaint alleges that Alters alone drafted the 2015 Agreement. *Id.* ¶ 39.

Morelli signed the 2015 Agreement individually and on behalf of Morelli Ratner, PC and Morelli Alters Ratner Law Firm LLP.[2]  Individually, Morelli agreed to abide by all the terms of the 2015 Agreement, including Section 7.  2015 Agreement at 11.  However, Morelli executed the 2015 Agreement on behalf of Morelli Law only as to sections 1 and 2 of the 2015 Agreement.  *Id.*

### 2. The 2018 Agreement

In 2018, although Morelli had still not received the funds allegedly promised to him by Alters, Morelli and Alters jointly agreed to borrow $5 million from a lender "in order to fund Morelli's practice and Alters' personal expenses."  Compl. ¶ 42.  Alters identified the lending company SCMLF LLC, which had previously loaned money to Morelli.  *Id.* ¶ 43.  However, allegedly because of the FSB investigation into Alters, "SCMLF refused to lend any money to Alters unless Morelli Law borrowed the money and Morelli personally guaranteed its repayment."  *Id.*  Thus, "Morelli agreed that Alters and Plaintiffs could take out a loan together and began negotiating the terms with SCMLF."  *Id.* ¶ 44.  The parties allegedly agreed that "part of the security for the repayment of the loan would be an assignment from Alters to Morelli of the approximately $5 million loan amount which Alters would pay from Alters' 50% retained interest in the Chinese Drywall fees."  *Id.* ¶ 45.  Alters again assured Morelli that this recovery was forthcoming and agreed that the assignment agreement would include additional fees from a different "Chinese-manufactured drywall products liability multidistrict litigation[.]"  *Id.*

Hence, on September 18, 2018, the parties executed another agreement (the "2018 Agreement").  *Id.* ¶ 51; *see* 2018 Agreement, Ex. B to Compl., Dkt No. 19-2.  In the 2018 Agreement, Alters "agreed to assign to Morelli Law the attorney's fees he was purportedly entitled to receive in connection with work on the additional cases" related to Chinese-manufactured drywall products.  Compl. ¶ 46.  Alters did not sign the final version of the 2018 Agreement attached to the

---

[2] The caption of this case explains that Morelli Law was formerly known as Morelli Ratner, PC.  Thus, Morelli Law can bring claims under the 2015 Agreement; neither party argues to the contrary.

complaint. *See* 2018 Agreement at 9. However, Alters allegedly signed an earlier version of the 2018 Agreement and informed Morelli and the lender's counsel that "signature on the earlier version applied to the final September 18, 2018 version[.]" Compl. ¶ 51. Alters allegedly knew that Morelli Law intended to take out a loan from a subsidiary financing company of SCMLF for approximately $5 million. *Id.* ¶ 47. The subsidiary allegedly required that Alters and Morelli enter into a formal assignment agreement as collateral for the loan. *Id.* The complaint also alleges that Alters knew that Morelli was to be "the primary obligor for the loan and would personally" guarantee its repayment. *Id.* ¶ 48. The 2018 Agreement contains a provision entitled "[s]ubmission to [j]urisdiction," in which both parties "submits to the exclusive jurisdiction of the United States District Court for the Southern District of New York and any New York State Court sitting in the Borough of Manhattan in the City and State of New York" with respect to any legal proceedings arising out of the 2018 Agreement. 2018 Agreement at 7, § 5.5.

During the negotiation of the 2018 Agreement, Plaintiffs allege that Alters sent Morelli and the lender "breakdowns and spreadsheets purportedly establishing the value of his rights to various legal fee recoveries." Compl. ¶ 50. Alters also allegedly sent Plaintiffs a copy of a written agreement between Alters and his co-counsel, Baron & Bud, regarding the cases that would purportedly generate the legal fees Alters had promised to Plaintiffs (the "Co-Counsel Agreement"). *Id.* Plaintiffs allege that this copy was fraudulent because it "was a 'doctored' version of the actual co-counsel agreement which Alters fraudulently changed to make it appear that he had the rights to fees, which he had repeatedly falsely represented to Morelli." *Id.* After the execution of the 2018 Agreement, Alters allegedly "asked Morelli if he could 'borrow' approximately $1 million" of the loan proceeds. *Id.* ¶ 53. Morelli assented. *Id.*

### 3. Morelli Learns of Alters' Alleged Fraud

In the summer of 2019, Plaintiffs allegedly learned that Alters' representations concerning his entitlement to fees in the Chinese Drywall and Bank Overdraft Cases were false. *Id.* ¶ 54. The

complaint alleges that Alters never had a right to the $40 million "he claimed he had earned in legal fees from the Chinese Drywall and Banking Overdraft cases." *Id.* ¶ 55. That was because Alters had relinquished "his rights to any fees in those cases through" the Co-Counsel Agreement. *Id.* Hence, when Morelli approached Baron & Bud in September 2019 to claim the portion of Alters' fees to which he was purportedly entitled, he was rebuffed. *Id.* ¶ 58. Baron & Bud allegedly provided Morelli with a correct copy of the Co-Counsel Agreement in which "Alters had promised his Payment Rights to [Baron & Bud] as repayment for the principal and interest on an outstanding loan" from that firm. *Id.* ¶ 59.

Plaintiffs allege that prior to the execution of the 2018 Agreement, Alters did not disclose that he had already pledged his right to fees from the Chinese Drywall Cases or Bank Overdraft Cases to Baron & Bud. After Morelli attempted to collect the fees owed to him by Alters, Alters allegedly learned that Baron & Bud had informed Morelli that the version of the Co-Counsel Agreement provided to Morelli was a forgery. *Id.* ¶ 61. The complaint alleges that Alters then attempted to invoke the mediation and arbitration clause in the 2015 Agreement. *Id.* Thus, "[o]n October 14, 2019, Alters made a demand that the parties mediate" within two weeks. *Id.* ¶ 62. When Morelli did not respond within the demand's timeframe, Alters allegedly attempted to demand that the parties enter arbitration. *Id.*

### B. Procedural History

Morelli filed a "summons with notice" against Alters in New York state court on November 6, 2019. Notice of Removal, Dkt No. 2, at 4. Alters removed the action to federal court on November 11, 2019. Notice of Removal at 1. Morelli filed a complaint on January 7, 2020. Dkt No. 19. Plaintiffs assert three claims for relief in the complaint. First, Plaintiffs allege that Alters fraudulently induced Morelli to enter the 2015 Agreement. Compl. ¶¶ 64-74. Second, Plaintiffs seek a declaratory judgment that the 2015 Agreement is invalid and unenforceable. *Id.* ¶¶ 75-78. Finally, Plaintiffs allege that Alters fraudulently misrepresented to Morelli that he was entitled to certain legal

fees and therefore induced him to enter to the 2018 Agreement. *Id.* ¶¶ 79-94. All three claims for relief are on behalf of both Morelli and Morelli Law.

Alters filed this motion to dismiss on February 5, 2020. Dkt Nos. 27-30, 39. In the motion, Alters seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(3) for improper venue. Memorandum of Law in Support of Motion to Dismiss ("Mem."), Dkt No. 28, at 1. Alters also asks the Court to strike various allegations from the complaint under Federal Rule of Civil Procedure 12(f). *Id.* In the alternative, the Alters asks the Court to convert the motion into a motion for summary judgment pursuant to Rule 56. *Id.* Plaintiffs subsequently filed their opposition, Dkt No. 43, and Alters filed his reply, Dkt Nos. 44-45.

## II. DISCUSSION

### A. Choice of Law

Because "[t]he threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles," *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted), the Court must first determine the relevant state law that applies to this motion. Neither the 2015 nor the 2018 Agreements contain a choice of law provision. Morelli argues that New York law should apply. Opposition to Motion to Dismiss ("Opp."), Dkt No. 43 at 12 n.3. Alters argues that Florida law should apply but argues that question is immaterial because "the law of both states are substantially similar regarding contract formation principles." Reply Memorandum of Law in Support of Motion to Dismiss ("Rep."), Dkt No. 44, at 4 n.6. If "[t]he parties' briefs assume that New York substantive law governs the issues . . . such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001) ); *see also Guardian Life Ins. Co. v. Gilmore*, 45 F.Supp.3d 310, 323 (S.D.N.Y. 2014) (collecting cases).

Thus, for purposes of this motion, the Court applies New York law to the interpretation of these agreements.

Under New York law, the initial interpretation of a contract by the court includes "the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998) (citations omitted); *accord, e.g.*, *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("Whether or not a writing is ambiguous is a question of law to be resolved by the courts.") (citation omitted). Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement[.]" *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (quotation omitted); *see also Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978) (citation omitted) (noting that no ambiguity exists when contract language has "a definite and precise meaning" about which "there is no reasonable basis for a difference of opinion"). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt, Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989).

A court applying New York law "may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case." *Bank of New York Mellon v. WMC Mortg., LLC*, 12CV7096 DLC, 2015 WL 2449313, at *2 (S.D.N.Y. May 22, 2015) (quoting *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992)). Rather, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009) (quotation omitted).

### B. Claims Related to the 2015 Agreement

Section 7 of the 2015 Agreement is an unambiguous agreement to arbitrate. However, because Alters has not petitioned the Court to compel arbitration, the Court will not compel

arbitration of Morelli's claims against Alters at this time. Furthermore, because Morelli Law did not agree to the arbitration provision of the 2015 Agreement, it cannot be compelled to arbitrate its claims. The complaint alleges that Plaintiffs were fraudulently induced to enter into the 2015 Agreement, *see* Compl. ¶¶ 64-74, and seeks a declaratory judgment that that "Plaintiffs never formed the 2015 Agreement" and that this agreement is therefore void. *Id.* ¶ 78. Alters moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. For the rasons that follow, that motion is denied.

### 1. Subject Matter Jurisdiction

#### a. Legal Standard

A defendant may move to dismiss a plaintiff's complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction. But where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits. In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal alterations and citations omitted); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Normally, motions to dismiss for lack of jurisdiction pursuant to [Rule] 12(b)(1) must be decided before motions pursuant to other Federal Rules of Civil Procedure are considered, since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot." *Liberty Ridge LLC v. RealTech Sys. Corp.*, 173 F. Supp. 2d 129, 134 (S.D.N.Y. 2001) (internal alterations and citation omitted); *see also Burris v. Hous. & Servs. Inc.*, No. 17-CV-9289 (JGK), 2019 WL 1244494, at *1 (S.D.N.Y. Mar. 18, 2019).

## b. Application

Even if valid, the arbitration clause in the 2015 Agreement does not divest the Court of subject matter jurisdiction. In his memorandum of law, Alters argues that because "the subject matter of the Complaint is subject to mandatory arbitration, th[e] Court should dismiss all causes of action for lack of subject matter jurisdiction" under Rule 12(b)(1). Mem. ¶ 42. However, an arbitration clause does not implicate the Court's subject matter jurisdiction. *See Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135*, 707 F.3d 140, 142 n.4 (2d Cir. 2013) (citation omitted) ("The FAA does not independently confer subject-matter jurisdiction on the federal courts[.]"). Rather, an agreement to arbitrate is a type of forum-selection clause. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (analyzing arbitration agreement as a forum selection clause); *see also Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) ("[A]n agreement to arbitrate does not affect a district court's subject-matter jurisdiction. An arbitration clause is a type of forum-selection clause.") (citation omitted).

Because enforcement of a forum selection clause is not jurisdictional, enforcement of a provision compelling arbitration does not implicate the Court's subject matter jurisdiction. *See Automobile Mech. Loc. 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 743 (7th Cir. 2007) ("Enforcement of a forum selection clause (including an arbitration clause) is not jurisdictional[.]"); *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 880-81 (8th Cir. 2017) (holding that "an arbitration agreement alone" does not "divest[] the federal courts of subject matter jurisdiction"); *cf. Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004) ("Our prior decisions support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted.").[3] Hence, Alters' motion to dismiss under Rule 12(b)(1) is denied.

---

[3] The Court acknowledges that some courts in this district and elsewhere have held that motions to compel arbitration are properly brought under Rule 12(b)(1). *See NYP Holdings, Inc. v. Newsp. and Mail Deliverers' Union of New York &*

## 2. Enforcement of Arbitration Agreement

Alters has not petitioned to compel arbitration. As discussed in further detail below, a party may petition the court for an order compelling arbitration. *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure . . .of another to arbitrate under a written agreement for arbitration *may petition* any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement[.]") (emphasis added). However, Alters has not petitioned this Court for an order compelling arbitration; instead, he filed a separate action to compel arbitration in Florida state court, which Morelli subsequently removed to a Florida district court. *See Alters v. Morelli*, No. 1:20-CV-20164-MGC (S.D. Fla.). Consequently, the Court will not compel the parties to arbitrate at this time. In their briefing on this motion to dismiss, however, the parties addressed issues related to the enforceability of the arbitration provision in the 2015 Agreement. Although the Court need not resolve these arguments on this motion, it nonetheless analyzes the enforceability of the arbitration provision of the 2015 Agreement to provide guidance to the parties.

### a. Legal Standard

Under Section 2 of the FAA, as a general matter, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also provides that parties can petition the district court for an order compelling arbitration under 9 U.S.C. § 4. Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the

*Vicinity*, 01 CIV. 4451 (SAS), 2002 WL 1603145, at *1 n.2 (S.D.N.Y. July 18, 2002) ("The Union's assertion that arbitration is the proper forum for the Post's claims is considered a motion under Rule 12(b)(1) that this Court lacks subject matter jurisdiction over the action.") (citing *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 381 (S.D.N.Y. 2002)); *Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014) ("[A] district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration."). However, none of these decisions considered the argument that because the FAA does not confer jurisdiction, a motion to dismiss based on a contractual obligation to arbitrate is not proper under Rule 12(b)(1). Moreover, these decisions are arguably inconsistent with Supreme Court precedent and rulings of multiple circuit courts that have examined the question. Accordingly, the Court does not find these decisions persuasive.

controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . . .

9 U.S.C. § 4. A party has "refused to arbitrate" within the meaning of Section 4 if it "commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citation and brackets omitted); *see also Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (finding no refusal to arbitrate where respondents had not commenced litigation nor failed to comply with an order to arbitrate).

"The role of federal courts, in ruling on a petition to compel arbitration under the FAA, is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected, or refused to arbitrate.'" *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 566-67 (S.D.N.Y. 2013) (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (quotation omitted)). "It has long been settled that arbitration is a matter of contract and that, therefore, a party cannot be compelled to arbitrate issues that a party has not agreed to arbitrate." *Id.* at 567 (citation omitted). If the Court determines "that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015) (quotation omitted).

"The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Nicosia*, 834 F.3d at 229 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "This principle flows inexorably from the fact that arbitration is simply a matter of contract between the parties." *Id.* (quotation and brackets omitted); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (holding that "arbitration is a matter of contract") (quotation omitted); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (holding that, with respect to an

arbitration agreement, "as with any other contract, the parties' intentions control") (quotation omitted). Hence, "[t]he threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia*, 834 F.3d at 229 (citation omitted). However, "[t]he Supreme Court has interpreted the FAA broadly, finding a 'liberal federal policy favoring arbitration agreements.'" *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 533 (E.D.N.Y. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (brackets omitted). Furthermore, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *see also Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense.") (quotation omitted). Courts in this Circuit engage in the following inquiry:

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)).

### b. Application

If Alters petitioned to compel arbitration, the Court would likely require Morelli to arbitrate his claims under the 2015 Agreement. However, because Morelli Law did not agree to the arbitration provision in that agreement, its claims are not subject to arbitration. Because the parties briefed the questions of the enforceability of the arbitration provision in the 2015 Agreement in the context of the Rule 12(b)(1) motion described above, the Court is well equipped to provide the parties with guidance in this opinion. However, because Alters did not petition this Court to compel arbitration, it will not compel the parties to arbitrate at this time.

### i. Claims Asserted by Morelli Individually

When deciding a petition to compel arbitration, the Court must first decide whether Morelli and Alters agreed to arbitrate. As noted above, "[t]he question of whether the parties have agreed to arbitrate, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Nicosia*, 834 F.3d at 229 (quoting *Howsam*, 537 U.S. at 83). The 2015 Agreement states that "[t]he parties to this agreement agree to mediate any disputes with a mutually agreed upon mediator. If mediation fails to resolve any dispute, the parties agree to arbitrate with a mutually agreed arbitrator or arbitrators." 2015 Agreement § VII, at 10. This provision does not clearly and unmistakably provide that the question of arbitrability is for the arbitrator. Consequently, the Court must decide the threshold question of arbitrability under Section 7.

Section 7 is an unambiguous agreement to arbitrate. That section provides that the parties must submit "any dispute" to arbitration. The broad language employed in Section 7 plainly covers Morelli's fraudulent inducement and declaratory judgment claims, as those causes of action arise out of the 2015 Agreement. It is undisputed that Morelli has failed to arbitrate. Thus, Morelli would be required to arbitrate those claims if Alters petitioned to compel arbitration.

Plaintiffs' arguments against this conclusion are unpersuasive. Plaintiffs first argue that Section 7 cannot be enforced because it lacks material terms. "Under New York contract law, the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties." *Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571, 576 (2d Cir. 1983) (citation omitted); *see also Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*, 349 F. App'x 551, 555 (2d Cir. 2009) ("[U]nder New York law a party seeking to enforce a contract must prove not only the existence of the contract, but also its terms.") (citation omitted).

"The contract must satisfy the 'doctrine of definiteness' which 'in short means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to.'" *Alexia ("Anthony") Daskalakis v. Forever 21, Inc.*, No. 15-CV-1768(RRM)(SMG), 2016 WL 4487747, at *3 (E.D.N.Y. Aug. 25, 2016) (quoting *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91 (1991)) (alterations omitted). "The law is clear that although the parties may intend to enter into a contract, if essential terms are omitted from their agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result." *V'Soske v. Barwick*, 404 F.2d 495, 500 (2d Cir. 1968) (citation omitted). "The Second Circuit has stated that under New York law, a term is 'essential' if it 'seriously affects the rights and obligations of the parties.'" *Daskalakis*, 2016 WL 4487747, at *3 (quoting *Ginsberg Mach. Co. v. J. & H. Label Processing Corp.*, 341 F.2d 825, 828 (2d Cir. 1965)). "Although the omission of essential terms, or inclusion of terms that are too 'indefinite,' will render a contract unenforceable, 'the terms contemplated by the agreement need not be fixed with complete and perfect certainty for a contract to have legal efficacy.'" *Id.* (quoting *V'Soske*, 404 F.2d at 500). "Striking down a contract as indefinite and in essence meaningless is at best a last resort." *166 Mamaroneck Ave.*, 78 N.Y.2d at 91 (quotation omitted).

Section 7 is not so indefinite that it is unenforceable. Morelli and Alters unambiguously agreed to arbitrate: "[T]he parties agree to arbitrate with a mutually agreed arbitrator or arbitrators." 2015 Agreement § VII, at 10. Although the parties did not agree on who would serve as an

arbitrator or how the parties would select an arbitrator, "the FAA provides an objective method to fill gaps in arbitration agreements." *Wework Companies Inc. v. Zoumer*, No. 16-CV-457 (PKC), 2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016) (citing 9 U.S.C. § 5).[4] Hence, the lack of these terms is not fatal to Section 7's enforceability because the Court can appoint an arbitrator following a demand pursuant to section 5 of the FAA.

The lack of other terms also does not render Section 7 vulnerable to an indefiniteness challenge. Plaintiffs point to the fact that Section 7 does not specify whether arbitration is binding or supply many other purportedly material terms. *See* Opp. at 12-14. However, "Courts within this circuit have routinely rejected the argument that the procedural rules governing arbitration"— including "the forum, binding nature, and rules of discovery"—"constitute essential terms." *Hudson Specialty Ins. Co. v. New Jersey Transit Corp.*, No. 15-CV-89 ER, 2015 WL 3542548, at *7 (S.D.N.Y. June 5, 2015).[5] Accordingly, Section 7 does not fail for indefiniteness.

Morelli's next argument is that Alters failed to satisfy a condition precedent to arbitration by failing to engage in mediation, but an arbitrator must decide this issue. Section 7 states that "[t]he

---

[4] *See* 9 U.S.C. § 5 ("If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator."); *see also id.* § 7.

[5] *See id.* ("Many of the missing details, such as the forum, binding nature, and rules of discovery, will necessarily be established once the parties select an arbitrator."); *Gerena v. Neurological Surgery, P.C.*, No. CV154634JMAGRB, 2016 WL 3647782, at *4 n.4 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 215CV04634JMAGRB, 2016 WL 3647866 (E.D.N.Y. July 1, 2016) (holding that "the method for selecting an arbitrator, the arbitral forum, the procedural law to be followed, the substantive law to be applied, and the location where the arbitration should be held" were non-essential terms) (citations omitted); *Wework*, 2016 WL 1337280, at *5 ("While the arbitration clause in the present case is admittedly terse, the language indicates that the parties agreed to be bound. . . . The lack of specific terms governing the arbitration's procedure does not invalidate the agreement, considering that the FAA provides an objective method to fill gaps in arbitration agreements.") (citation omitted); *Al Maya Trading Establishment v. Glob. Exp. Mktg. Co.*, No. 14-CV-275 (PAE), 2014 WL 3507427, at *3 n.2 (S.D.N.Y. July 15, 2014) (holding that the venue of the arbitration and arbitral body are not essential terms); *Daskalakis*, 2016 WL 4487747, at *4 (rejecting the argument that an arbitration agreement failed "under the definiteness doctrine on the grounds that the Agreement does not identify the arbitral forum or location, the identity of or method for selecting an arbitrator, the arbitration procedures, or the choice of law"). *But see Dynamic Int'l Airways, LLC. v. Air India Ltd.*, No. 15-CV-7054 (PKC), 2016 WL 3748477, at *6 (S.D.N.Y. July 8, 2016) ("[T]he parties left out at least three terms critical to any arbitration: the location, forum and rules of the arbitration.").

parties to this agreement agree to mediate any disputes with a mutually agreed upon mediator" and

arbitration is to occur only "[i]f mediation fails to resolve any dispute." 2015 Agreement § VII, at

10. Plaintiffs argue that because the parties have not engaged in mediation, there has been a failure

of a condition precedent to arbitration. Under New York law, "[a] condition precedent is 'an act or

event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to

perform a promise in the agreement arises.'" *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 22

(2d Cir. 2018) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690

(1995)). "[T]he failure to satisfy a condition precedent 'excuses performance by the other party

whose performance is so conditioned.'" *Id.* (quoting *Merritt Hill Vineyards Inc. v. Windy Heights

Vineyard, Inc.*, 61 N.Y.2d 106, 113 (1984)).

An arbitrator must decide whether the failure to mediate is a failure of a condition

precedent. The Supreme Court has explained that "in the absence of an agreement to the contrary,

issues of substantive arbitrability are for a court to decide and issues of procedural arbitrability, *i.e.,*

whether prerequisites such as time limits*,* notice, laches, estoppel, and other conditions precedent to

an obligation to arbitrate have been met, are for the arbitrators to decide." *Howsam*, 537 U.S. at 85

(quoting Revised Uniform Arbitration Act of 2000 § 6(c), comment 2, 7 U.L.A., at 13) (emphasis

and ellipsis omitted).[6] Similarly, "the presumption is that the arbitrator should decide 'allegations of

waiver, delay, or a like defense to arbitrability.'" *Id.* at 84 (quoting *Moses H. Cone Mem'l Hosp.*, 460

U.S. at 25) (brackets omitted). The Supreme Court has further elaborated that a condition precedent

is procedural, and thus should be submitted to an arbitrator, if it concerns "*when* the contractual duty

to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all." *BG Grp., PLC v. Republic

of Argentina*, 572 U.S. 25, 35 (2014) (citing 13 R. Lord, Williston on Contracts § 38:7, pp. 435, 437; §

---

[6] In *Howsam*, the Supreme Court did not say explicitly whether it was applying federal or state law. However, if the *Howsam* court applied state law, it applied New York law. *See Howsam*, 537 U.S. at 87 (Thomas, J., concurring in the judgment) (applying New York law). Hence, the Court need not interpret whether *Howsam* held that procedural conditions precedent must be submitted to an arbitrator as a matter of federal or state law.

38:4, p. 422 (4th ed. 2013)). *BG Group* clarifies that what *Howsam* referred to as "issues of substantive arbitrability," *Howsam*, 537 U.S. at 85, refers to "questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *BG Grp.*, 572 U.S. at 34 (citing *Howsam*, 537 U.S. at 84; other citations omitted).

The issue of whether the parties' failure to mediate frustrated a condition precedent and excuses Morelli from his duty to arbitrate is a question of procedural arbitrability and thus must be determined by an arbitrator. The Court has already decided that Section 7 obligates the parties to arbitrate. The issue is simply whether the parties are obligated to mediate before they proceed to arbitration. This is a procedural question because it is not a question of whether there Morelli and Alters are bound by a duty to arbitrate. Hence, it should be decided by an arbitrator.

Moreover, there is a substantial question regarding whether Morelli has waived his right to mediate before proceeding to arbitration by failing to respond to Alters' demand to mediate. The complaint alleges that "[o]n October 14, 2019, Alters made a demand that the parties mediate[.]" Compl. ¶ 62. However, the complaint also alleges that in his demand, Alters proposed that the parties mediate within two weeks. *Id.* Alters argues that Morelli has waived his right to demand arbitration by failing to respond to his demand to mediate; even if it is true that mediation could not have been completed within two weeks, Alters argues that Morelli could have proposed a different timeline. And "[a] party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition." *Utica Mutual*, 906 F.3d at 23 (quoting *MHR Capital Partners*, 12 N.Y.3d at 646). *Howsam* held that waiver is a defense that should be decided by an arbitrator. Accordingly, the failure of the parties to mediate would not prevent the Court from sending Morelli's claims to arbitration.

Morelli's final argument is that the Court must decide his fraudulent inducement claim, but higher courts have held to the contrary. "It is well settled that a claim or defense of fraudulent

inducement, when it challenges generally the enforceability of a contract containing an arbitration clause rather than specifically the arbitration clause itself, may be subject to arbitration." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002) (Sotomayor, J.) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."). Here, Plaintiffs do not allege that Alters fraudulently induced the arbitration agreement specifically. Rather, they allege that the entire contract was the result of fraudulent inducement. Accordingly, Plaintiffs' claim of fraudulent inducement is subject to arbitration.

Morelli fails to distinguish this binding precedent. Morelli argues that in both *Prima Paint* and *Buckeye*, the arbitration provisions "clearly and unmistakably gave the arbitrator the power to determine arbitrability" and thus are distinguishable from the arbitration provision in this case. Opp. at 10-11 (emphasis omitted). But this distinction is not supported by the text of the FAA or decisions of higher courts. Section 2 of the FAA states that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This text does not support Plaintiffs' proposed distinction. Moreover, in *Buckeye*, the Supreme Court held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing*, 546 U.S. at 445-446. Again, there is no support for Plaintiffs' proposed distinction in this categorical holding.

Finally, Second Circuit precedent forecloses Plaintiffs' proposed distinction. In *ACE Capital*, the Second Circuit considered an arbitration clause that stated

> [a]s a condition precedent to any right of action hereunder, if any dispute shall arise between the parties hereto with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two arbitrators so chosen.

307 F.3d at 27. This arbitration clause does not provide that the question of arbitrability is for the arbitrator. Nonetheless, the Second Circuit applied *Prima Paint* and held that the arbitrator should decide the plaintiff's claim for fraudulent inducement. *Id.* at 30-34. The same result is warranted here. Accordingly, if Alters petitioned to compel arbitration, Morelli's claims for fraudulent inducement and declaratory judgment would be subject to arbitration based on the 2015 Agreement.

### ii. Claims Asserted by Morelli Law

Morelli Law cannot be compelled to submit its claims under the 2015 Agreement to arbitration, however. Morelli Law was a signatory to the 2015 Agreement but only agreed to be bound by sections 1 and 2 of the 2015 Agreement. 2015 Agreement at 11. The Supreme Court has emphasized that because "arbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam*, 537 U.S. at 83 (quotation omitted). And a court applying New York law may not "rewrite, under the guise of interpretation, a term of the contract[.]" *Bank of New York Mellon*, 2015 WL 2449313, at *2 (quotation omitted). For that reason, "exceptional circumstances must apply before a court will impose a contractual agreement to arbitrate on a non-contracting party." *Stechler v. Sidley, Austin Brown & Wood, L.L.P.*, 382 F. Supp. 2d 580, 591 (S.D.N.Y. 2005) (quotation omitted).

These exceptional circumstances do not apply to the facts of this case. The Second Circuit has "recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). Alters first argues that Morelli Law assumed Morelli's contractual obligations by making payments to Alters. Mem. ¶ 26. "[A non-

signing] party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate." *Thomson-CSF*, 64 F.3d at 777 (citations omitted). Alters points to the complaint's allegation that "Plaintiffs performed under the 2015 Agreement and made all payments to Alters pursuant to the agreement totaling more than $9 million." Compl. ¶ 69. This conduct, as alleged, does not indicate that Morelli Law is assuming the obligation to arbitrate. *Cf. Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991) (flight attendants manifested a clear intention to arbitrate by sending a representative to act on their behalf in arbitration process). Alters also argues that Morelli is the agent of Morelli Law, but this argument disregards corporate formalities, an extraordinary and, in this case, unwarranted step. *Cf. Thomson-CSF*, 64 F.3d at 776 (refusing to bind nonsignatory parent to subsidiary's arbitration agreement).

Finally, Alters argues that Morelli Law is estopped from avoiding arbitration because it has received benefits from the 2015 Agreement generally. Under the estoppel theory, a company "knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp., LLC*, 268 F.3d 58, 61 (2d Cir. 2001) (quotation and brackets omitted). However, "[t]he benefits must be direct—which is to say, flowing directly from the agreement. . . . By contrast, the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *Id.* (citations omitted). Morelli Law has not received a direct benefit from the 2015 Agreement within this definition. *Cf. Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (holding that a nonsignatory who had received a copy of the agreement, raised no objections to it and made use of that trade name pursuant to the agreement was estopped from arguing it was not bound by the arbitration clause in the agreement). Therefore, Morelli Law is not bound by Section 7 and can pursue claims under the 2015 Agreement in this action.

Alters' final argument that Morelli Law is not a real party in interest in this litigation is unpersuasive. *See* Mem. at 9-10. Morelli Law is a signatory of the 2015 Agreement, which Plaintiffs argue was fraudulently induced. Moreover, the complaint alleges that "Plaintiffs performed under the 2015 Agreement and made all payments to Alters pursuant to the agreement totaling more than $9 million." Compl. ¶ 69. Thus, Morelli Law is plainly a real party in interest in this litigation. Accordingly, Morelli Law cannot be obligated to arbitrate its claims against Alters.[7]

### C. Fraudulent Misrepresentation Claim

Plaintiffs' fraudulent misrepresentation claim is not subject to arbitration. The complaint alleges that Alters fraudulently misrepresented that he was entitled to attorneys' fees with respect to cases on which Alters served as co-counsel with Baron & Bud. Compl. ¶¶ 79-94. Alters argues that these claims are subject to arbitration based on the agreement to arbitrate in the 2015 Agreement. However, assuming the 2018 Agreement is valid, there is no basis to conclude that the parties intended Section 7 of the 2015 Agreement to cover disputes arising under the 2018 Agreement. The 2018 Agreement contains an integration clause that precludes consideration of the 2015 Agreement in its interpretation. 2018 Agreement at 7, § 5.6. Moreover, the 2018 Agreement states that "[e]ach party hereby submits to the exclusive jurisdiction of the United States District Court for the Southern District of New York and any New York State Court sitting in the Borough of Manhattan . . . for purposes of all legal proceedings arising out of or relating to this Agreement or the transactions contemplated hereby." *Id.* at 7, § 5.5. Hence, although the 2015 Agreement says that "any disputes" between the parties to the 2015 Agreement are subject to arbitration, this provision does not extend to disputes arising under the 2018 Agreement.

---

[7] The Court observes that Alters did not move to dismiss claims asserted by Morelli Law on the ground that it has not stated a claim upon which relief can be granted. *See* Mem. ¶ 21 (arguing that Morelli Law "has no valid causes of action based on the 2015 Agreement"). But Alters did not so move, *see id.* ¶ 1 (moving to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(f), but not doing so under Rule 12(b)(6)), and thus the Court has not considered whether to dismiss Morelli Law's claims on that basis.

Alters' argument to the contrary is unpersuasive. Alters argues that he did not execute a final version on the 2018 Agreement, so the 2018 Agreement is not valid and binding on him. In support of this argument, Alters relies on four declarations submitted in support of his motion to dismiss. *See* Declaration of Jeremy Alters, Dkt No. 29; Declaration of David I. Rosenblatt, Dkt No. 30; Declaration of Robert Stok, Dkt No. 39; Declaration of Jeremy Alters, Dkt No. 45.

The Court did not consider these declarations in deciding this motion to dismiss. Alters frames his motion as a motion to dismiss under Rule 12(b)(1). It is true that, when considering such a motion, a "defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (citation omitted). However, as noted above, a motion to dismiss based on an arbitration clause is not properly framed as a motion to dismiss under Rule 12(b)(1). Moreover, although "courts apply a standard similar to that applicable for a motion for summary judgment" to a petition to compel arbitration, Alters has not petitioned to compel arbitration. *Nicosia*, 834 F.3d at 229 (quotation omitted). Thus, precedent regarding the Court's ability, or duty, to look beyond the pleadings on a Rule 12(b)(1) motion or a petition to compel arbitration is inapposite.

The Court will not convert Alters' motion to dismiss into a motion for summary judgment. Alters argues that the Court should do so in his motion papers. *See* Mem. ¶ 1. However, there are several reasons that considering evidence outside the pleadings is not appropriate with respect to this motion. As an initial matter, because the Court has decided not to dismiss all of the claims in this litigation, Alters will have an opportunity to present these arguments at the summary judgment phase of this litigation. Thus, he will not be prejudiced by the Court's decision not to consider the materials outside the pleadings.

Furthermore, likely because Alters' framed his motion primarily as a motion to dismiss, Plaintiffs have not presented admissible evidence in opposition to this motion. Relatedly, the parties have not completed discovery in this case. *Cf. Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*,

458 F. Supp. 2d 160, 165 (S.D.N.Y. 2006) ("Normally, summary judgment is inappropriate before the parties have had an opportunity for discovery.") (citation omitted).  The parties might exchange materials in discovery that bear on the principal question presented in Alters' motion—*i.e.*, whether Alters agreed to be bound by the 2018 Agreement.  Hence, it would be premature for the Court to decide that issue at this time, especially because Plaintiffs not presented evidence in opposition to this motion.  *Cf. id.* ("When only one party seeks to convert a motion to dismiss into a motion for summary judgment prior to discovery by offering additional exhibits and affidavits outside the pleadings, a court may simply disregard any such submissions and decide the motion to dismiss on the merits of the pleadings alone.") (citation omitted).[8]  Accordingly, the Court has not considered the declarations Alters submitted in support of this motion.

Based on the facts pleaded in the complaint, the Court cannot conclude on this motion to dismiss that Alters did not agree to be bound by the 2018 Agreement.  It is true that the copy of the 2018 Agreement attached as an exhibit to the complaint contains two different signature pages, one of which appears to be labeled as "v.2," presumably meaning "version 2" and the other as "v.4," presumably meaning "version 4."  However, the complaint alleges that "[a]lthough Alters initially signed an earlier version of the [2018 Agreement] in or about August 2018, he advised YSLF's counsel and Morelli that he agreed to be bound by the final version of the assignment agreement and informed them that his signature on the earlier version applied to the final September 18, 2018

---

[8] Furthermore, because motion is framed as a motion to dismiss, Plaintiffs may not have received adequate notice that the Court might treat this motion as a motion for summary judgment.  *Cf. Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d 321, 325 (S.D.N.Y. 2002) ("In general, a district court should give parties notice of its intent to convert a motion to dismiss into a motion for summary judgment. . . . The essential inquiry is whether the opposing party should reasonably have recognized the possibility that the motion might be converted to one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleading.") (quotation and brackets omitted); *see also In re G. & A. Books, Inc.*, 770 F.2d 288, 294-95 (2d Cir. 1985).  Morelli briefed this motion as a motion to dismiss. *See* Opp. at 18-19.  However, as noted above, Alters' requested in his motion papers that the Court convert this motion into a motion for summary judgment, which might constitute adequate notice.  Mem. ¶ 1.  Of course, these motion papers do not constitute notice from the Court of its intent to convert the motion into a motion for summary judgment, but Morelli arguably could have reasonably recognized the possibility that this motion might be converted into a motion for summary judgment.  In any event, the Court need not and does not decide whether this constituted adequate notice because the grounds noted above are sufficient reason for the Court to decline to consider matters outside the pleadings.

version of the 2018 Assignment Agreement." Compl. ¶ 51. Based on this allegation, the Court

must assume, at this stage of the litigation, that Alters agreed to be bound by the 2018 Agreement.

Consequently, because Plaintiffs' fraudulent misrepresentation claim arises under the 2018

Agreement and that agreement does not require that disputes are subject to arbitration, Alters'

motion to dismiss on this ground is denied.

### D. Motion to Dismiss Based on Improper Venue

#### 1. Legal Standard

A defendant may also move to dismiss a plaintiff's complaint because venue is improper.

Fed. R. Civ. P. 12(b)(3). "When the basis for subject matter jurisdiction is diversity of citizenship, as

it is in this case, a case may be brought in 'a judicial district in which a substantial part of the events

or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of

the action is situated.'" *Morgan Stanley & Co. v. Seghers*, No. 10 CIV. 5378 (DLC), 2010 WL 3952853,

at *1 (S.D.N.Y. Oct. 8, 2010) (quoting 28 U.S.C. § 1391(a)(2)).

"The legal standard for a motion to dismiss under Rule 12(b)(3) for improper venue is the

same as for a motion to dismiss based on a lack of personal jurisdiction[.]" *Id.* Prior to discovery, a

plaintiff may defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) "by pleading

in good faith legally sufficient allegations of" venue. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902

F.2d 194, 197 (2d Cir. 1990) (citation omitted). "When there has been no hearing on the merits, 'all

pleadings and affidavits must be construed in the light most favorable to plaintiff and all doubts

must be resolved in plaintiff's favor.'" *Clean Vehicle Sols. Am. LLC v. Carrollton Exempted Vill. Sch.

Dist. Bd. of Educ.*, No. 15 CV 1503 VB, 2015 WL 5459852, at *2 (S.D.N.Y. Sept. 2, 2015) (quoting

*Landoil Res. Corp. v. Alexander & Alexander Servs. Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)) (alterations

omitted). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a

*prima facie* showing of venue.'" *Morgan Stanley & Co.*, 2010 WL 3952853, at *1 (quoting *Gulf Ins. Co.

v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)). "When a defendant challenges the venue of the

court, the plaintiff has the burden to establish that venue is proper." *Millennium Prod. Grp., LLC. v. World Class Freight, Inc.*, No. 217-CV-169(DRH)(AYS), 2018 WL 1247384, at *4 (E.D.N.Y. Mar. 9, 2018) (quotation omitted).

### 2. Application

Plaintiffs have adequately alleged that venue is proper in this district. The complaint pleads that a substantial part of the events giving rise to this action occurred in New York. *See* Compl. ¶¶ 17, 27, 33. Because the Court has chosen to rely on the pleadings, this is sufficient to make a *prima facie* showing of venue. Moreover, in the 2018 Agreement, the parties expressly waived any objection to venue in the Southern District. 2018 Agreement at 7, § 5.5. Accordingly, the Court cannot conclude at this stage that venue is improper in this district.

Alters' arguments to the contrary are unpersuasive. Alters' argument that venue is improper is based on a forum-selection clause in a 2014 agreement between Morelli and Alters. As a threshold matter, a forum-selection clause cannot be enforced through a Rule 12(b)(3) motion. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55, 59 (2013) ("Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause. . . . Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district.").

Even if Alters had brought his motion in a procedurally proper fashion, the Court would not consider the 2014 agreement at this stage. As noted above, the Court has chosen not to consider material outside the pleadings on this motion, so that agreement is not before the Court. But even were that agreement before the Court, it could not form the basis of a venue challenge to claims based on the 2015 or 2018 Agreements because those agreements do not refer to the 2014 agreement. In fact, both agreements contain integration clauses that would preclude the

consideration of the 2014 agreement in their interpretation. *See* 2015 Agreement at 10, § VII; 2018 Agreement at 7, § 5.6. Moreover, the 2018 Agreement contains a provision waiving any objection to venue in this district, so assuming the 2018 Agreement is valid for purposes of this motion to dismiss, Alters has waived his right to challenge venue in this district. Accordingly, Alters' motion to dismiss under Rule 12(b)(3) is denied.

### E. Motion to Strike

#### 1. Legal Standard

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may act either "on its own" or "on motion made by a party[.]" *Id.* "The courts should not tamper with pleadings unless there is a strong reason for so doing. As such, motions to strike are generally disfavored. Moreover, unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation, motions to strike allegations in the pleadings should be denied." *Quanta Specialty Lines Ins. Co. v. Inv'rs Capital Corp.*, No. 06 CIV. 4624 (PKL), 2008 WL 1910503, at *4 (S.D.N.Y. Apr. 30, 2008) (quotations omitted). "[A] movant must meet a high bar to prevail on" a motion to strike. *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09 CIV. 2669 LAP, 2015 WL 4757601, at *3 (S.D.N.Y. Aug. 12, 2015) (citations omitted).

#### 2. Application

Because there is not a strong reason to strike these allegations from the complaint, Alters' motion to strike is denied. Alters argues that certain allegations regarding Alters in the complaint are immaterial, impertinent and scandalous. Mem. ¶ 53 (citing Compl. ¶¶ 1, 2, 4). However, Alters has not identified a strong reason to overcome the presumption that motions to strike are disfavored. Moreover, although some allegations in the complaint portray Alters in an unflattering light, it is not clear at this stage that these allegations can have no possible bearing on the subject matter of this

litigation.  Accordingly, Alters has not met the high bar required on a motion to strike, and his motion is denied.

## III. CONCLUSION

For the foregoing reasons, Alters' motion to dismiss and to strike is DENIED.  The Clerk of Court is directed to terminate the motion pending at Dkt No. 27.

SO ORDERED.

Dated:  March 18, 2020
New York, New York

_____
GREGORY H. WOODS
United States District Judge