**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

BENEDICT P. MORELLI and THE MORELLI LAW FIRM, PLLC f/k/a MORELLI RATNER, PC

Plaintiffs,

v.

JEREMY ALTERS,

Defendant.

No. 1:19-cv-10707-GHW

Oral Argument Requested

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

KASOWITZ BENSON TORRES LLP

Marc E. Kasowitz
David E. Ross
Sondra D. Grigsby
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

BACKGROUND AND PROCEDURAL HISTORY ..... 2

ARGUMENT ..... 4

I. Legal Standard ..... 4

A. Plaintiffs Have Standing to Move to Quash the Subpoenas ..... 4

B. Plaintiffs Also Have Standing To Move For A Protective Order ..... 6

II. The Subpoenas Should Be Quashed ..... 6

A. The Bank Subpoenas Should Be Quashed ..... 7

B. The Hirschfeld Subpoena Should Be Quashed ..... 10

III. Plaintiffs Are Also Entitled to a Protective Order Barring The Bank Subpoenas and Hirschfeld Subpoena ..... 11

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariaz-Zeballos v. Tan*,
2007 WL 210112 (S.D.N.Y. Jan. 25, 2007) ....................4

*Carey v. Berisford Metals Corp.*,
1991 WL 44842 (S.D.N.Y. Mar. 28, 1991) ....................5

*Carvel v. Franchise Store Realty Corp.*,
2011 WL 13260780 (S.D.N.Y. June 16, 2011) ....................11

*Copantitla v. Fiskardo Estiatorio, Inc.*,
2010 WL 1327921 (S.D.N.Y. Apr. 5, 2010)....................5

*Duling v. Gristede's Operating Corp.*,
266 F.R.D. 66 (S.D.N.Y. 2010) ....................11

*During v. City Univ. of N.Y.*,
2006 WL 2192843 (S.D.N.Y. Aug. 1, 2006)....................6

*First Indem. Of Am. Ins. Co. v. Shinas*,
2005 WL 3535069 (S.D.N.Y. Dec. 23, 2005) ....................4

*In re Flag Telecom Holdings, LTD Secs. Litig.*,
2006 WL 2642192 (S.D.N.Y. Sept. 13, 2006)....................5

*Hawkins v. Medapproach Holdings, Inc.*,
2014 WL 11350177 (S.D.N.Y. June 27, 2014) ....................11

*Hughes v. Twenty-First Century Fox, Inc.*,
327 F.R.D 55 (S.D.N.Y. 2018) ....................4, 6

*In re McVane*,
44 F.3d 1127 (2d Cir. 1995)....................4

*Reserve Sols., Inc. v. Vernaglia*,
2006 WL 1788299 (S.D.N.Y. June 26, 2006) ....................5

*Solow v. Conesco, Inc.*,
2008 WL 19240 (S.D.N.Y. Jan. 18, 2008) ....................4, 5, 12

**Statutes**

Fed. R. Civ. P. 26.................... *passim*

Fed. R. Civ. P. 45 .......... 4

**Other Authorities**

6 Moore's Federal Practice: Civil § 26.42 .......... 6

8A Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. §2036 (3d ed) .......... 6, 11

Plaintiffs Ben Morelli ("Morelli") and Morelli Law submit this memorandum in support of their motion to quash, or in the alternative for a protective order pursuant to Fed. R. Civ. P. 26(c), with respect to subpoenas issued by Defendant Alters ("Defendant" or "Alters") to: (i) City National Bank ("CNB") (the "CNB Subpoena"); (ii) Esquire Bank ("Esquire") (the "Esquire Subpoena"); (iii) Plaintiff Funding Holding Inc. d/b/a LawCash ("LawCash") (the "LawCash Subpoena," and together with the CNB and Esquire Subpoenas, the "Bank Subpoenas"); and (iv) Harvey R. Hirschfeld (the "Hirschfeld Subpoena," and together with the Bank Subpoenas, the "Subpoenas").[1]

**PRELIMINARY STATEMENT**

The Subpoenas are a model of irrelevant discovery that Alters has served in an attempt to gain access to Plaintiffs' sensitive financial information and to harass Plaintiffs. The Bank Subpoenas seek all documents and information going back 10 or more years regarding every loan and every bit of financial disclosure and communication between Plaintiffs and various banks. The Subpoenas could not be broader nor could they be more improper. They have no connection whatsoever to any claim or defense in this case. The claims in this case are that Alters defrauded Plaintiffs into entering into the 2015 Agreement based on Alters' knowingly false promise to give Plaintiffs half of his purported share of contingency fee recoveries that Alters had no right to, and Plaintiffs further claim that Alters made fraudulent misrepresentations which caused Plaintiffs to take out, and guarantee, a $5 million loan. Thus, the only loan at issue in this litigation is the SCMLF/YSLF loan obtained in connection with the 2018 Assignment Agreement. (¶¶ 42-53).

---

[1] Capitalized terms not defined herein have the same meaning as defined in the Complaint (Dkt. No. 19). Citations herein to "¶ ___" are to paragraphs of the Complaint. References to the 2015 Agreement and 2018 Assignment Agreement respectively are to the documents attached as Exhibit A and Exhibit B to Plaintiffs' Complaint. Also accompanying this memorandum is the Declaration of David E. Ross in Support of Plaintiffs Motion to Quash, dated July 22, 2020 (the "Ross Decl."). "Ex. ___" refers to the exhibits to the Ross Decl.

Defendant has already served multiple subpoenas on the SCMLF/YSLF entities, their executives, and their legal counsel. Those subpoenas are not the subject of this motion.

The Subpoenas at issue are patently improper because there is no claim or defense in this case that bears on Plaintiffs' banking practices, on their general relationship with lenders, on the state of Morelli's finances or his firm's finances, or Plaintiffs' relationships with CNB, Esquire, or LawCash. Indeed, none of these banks were listed in Alters' initial disclosures of knowledgeable witnesses, and Alters cannot claim to have first learned their identities from discovery exchanged in this case. Attempting to manufacture a connection between these Subpoenas and this case, Alters grasps at a word here or there in the pleadings, but those efforts fall flat: the Subpoenas seek an intrusive examination of Plaintiffs' finances, their banking relationships, their disputes with certain lenders, and other financial discovery having zero to do with this case. Alters' concession that he hopes to identify through these Subpoenas some illicit banking behavior by Plaintiffs is a glaring red flag that the Subpoenas are a classic "fishing expedition." Alters is looking for trouble, but not trouble that has anything to do with this case. The Subpoenas are thus not relevant, are improper, calculated to harass, and should be quashed or otherwise precluded by protective order.

## BACKGROUND AND PROCEDURAL HISTORY

This case concerns claims for the fraudulent inducement of and misrepresentations regarding two agreements -- the 2015 Agreement and the 2018 Assignment Agreement. Nowhere in those agreements or in the pleadings are any of the subpoenaed banks named, or even alluded to or referenced. There is no connection between the claims and defenses in this case and Plaintiffs' banking, financial or other dealings with any of CNB, LawCash, and Esquire. Indeed, though Alters listed 19 individuals and entities in his Rule 26(a) Initial Disclosures as those likely to have relevant information, Alters did not list any of the banks or Hirschfeld in those disclosures.

Nor has he amended those disclosures -- which he was required to promptly do upon identifying potential additional witnesses. *See* Fed. R. Civ. P. 26(e).

Plaintiffs commenced this action on November 6, 2019, and Alters filed his notice of removal to this Court on November 20, 2019. (Dkt. No. 2). Following Plaintiffs' filing of the Complaint on January 7, 2020 (Dkt. No. 19), Alters moved to dismiss the action, among other relief, on the grounds that the entire dispute was subject to arbitration; the court lacked subject matter jurisdiction; and Florida was a more appropriate venue. (Dkt. No. 28). The Court denied Alters' motion in its entirety by order dated March 18, 2020. (Dkt. No. 51). While Alters' motion to dismiss was pending, Alters also sought to stay or limit discovery, which the Court also denied. (Dkt. No. 42). Alters then moved to compel arbitration and stay the remainder of the proceedings (Dkt. No. 55). The Court granted in part and denied in part Alters' motion, holding that Morelli's claims related to the 2015 Agreement are arbitrable, and that Morelli Law's 2015 Agreement claims and Plaintiffs' claims related to the 2018 Assignment Agreement are not arbitrable and would not be stayed. (Dkt. No. 67).

On May 28, 2020, the Court so-ordered the parties' joint revised discovery schedule providing that document discovery be completed by August 31, 2020. (Dkt. No. 71). On June 15, 2020, Alters served notices of intent to serve subpoenas on, among others, CNB, Esquire, LawCash, and Hirschfeld. On June 26, Plaintiffs demanded that Alters withdraw the subpoenas, which Alters refused to do on June 29.[2] The parties filed a joint letter identifying their respective positions on the Subpoenas on July 7. (Dkt. No. 74). On July 10, the Court granted Plaintiffs' request to file the instant motion to quash the Bank Subpoenas. (Dkt. No. 76).

[2] As of the date of this memorandum of law, Plaintiffs have only received a copy of LawCash's responses and objection to Alters' subpoena. Ross Decl. Ex. E. For each request, LawCash objected to producing any responsive documents and stated it would produce "any funding agreements with Morelli in the event the information is relevant to the claims in the Complaint or any defenses." *Id.* at 3-10.

# ARGUMENT

Alters' subpoenas are not relevant to any claim or defense in this action, nor do they seek legitimate discovery. They were served to seek confidential financial information completely unrelated to this case, and to harass Plaintiffs, and thus should be quashed.

## I. Legal Standard

### A. Plaintiffs Have Standing to Move to Quash the Subpoenas

A court may quash or modify a subpoena in order to "protect a person subject to or affected by a subpoena" if the subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45. Parties have standing to move to quash a subpoena where the information sought is inappropriately intrusive. *See, e.g.*, *First Indem. Of Am. Ins. Co. v. Shinas*, 2005 WL 3535069, at *3 (S.D.N.Y. Dec. 23, 2005). Courts in the Southern District have recognized a party's right to challenge a subpoena where the subpoena intrudes on a "personal right or privilege with regard to the documents sought." *See, e.g.*, *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D 55, 57 (S.D.N.Y. 2018). On a motion to quash, "the inquiry courts apply is whether the information itself is private, confidential, privileged, or highly sensitive." *Solow v. Conesco, Inc.*, 2008 WL 19240, at *4 (S.D.N.Y. Jan. 18, 2008). "[I]t is well-established that a party with a real interest in the documents has standing to raise objections to their production." *Id.* at *3; *see also In re McVane*, 44 F.3d 1127, 1136 (2d Cir. 1995) ("[C]ourts have recognized certain 'rights to privacy' of individuals . . . . Among these protected rights is the individual interest in avoiding disclosure of personal matters.") (internal quotations and citation omitted).

Plaintiffs have standing here to challenge the Bank Subpoenas and the Hirschfeld Subpoena. Where a party's privacy interest in banking and other financial records are at issue, such standing is routinely recognized. *See, e.g.*, *Ariaz-Zeballos v. Tan*, 2007 WL 210112, at *1

(S.D.N.Y. Jan. 25, 2007) (finding standing to quash subpoena issued to third-party banks based on movant's "privacy interest in [his] financial affairs"); *In re Flag Telecom Holdings, LTD Secs. Litig.*, 2006 WL 2642192, at *2 (S.D.N.Y. Sept. 13, 2006) ("[A] party may have a sufficient privacy interest in the confidentiality of records pertaining to their personal financial affairs so as to give them standing to challenge the subpoenas.").[3]

Here, the Bank Subpoenas and the Hirschfeld Subpoenas seek a broad range of financial records, including, without limitation, loans involving Plaintiffs or any law firm of which Morelli is a partner or shareholder within the last ten years; pledges of fees as repayment of loans; loan applications; warranties and representations; guarantees; pledges of collateral; financial forecasts; and UCC filings. Ross Decl. Exs. A-E. These are Plaintiffs' financial records, and Plaintiffs thus have a privacy interest sufficient to confer standing as regards the information sought from CNB, Esquire, and LawCash. *See In re Flag Telecom Holdings*, 2006 WL 2642192 at *2.

Plaintiffs also have standing because the Subpoenas seek sensitive non-financial information about Plaintiffs and their prior litigations with CNB. *See Solow*, 2008 WL 190340, at *4 ("While subpoenas for bank records most often evoke privacy claims, there is no case, to this Court's knowledge, that has held that the only financial documents that are entitled to confidential treatment are bank records, or that it is only bank records that implicate a party's interest."). Such standing extends to the sensitive, non-financial requests included in the Hirschfeld Subpoena. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 2010 WL 1327921, at *8 n.3 (S.D.N.Y. Apr. 5, 2010) (moving defendants had standing to move to quash subpoenas seeking "personal information about the individual defendants, including their business financial and employment relationships . . . .

[3] *See also Reserve Sols., Inc. v. Vernaglia*, 2006 WL 1788299, at *1 (S.D.N.Y. June 26, 2006) ("Since Vernaglia claims a personal privacy right in the financial records being sought, he has standing to object to the issuance of the subpoena."); *Carey v. Berisford Metals Corp.*, 1991 WL 44842, at *8 (S.D.N.Y. Mar. 28, 1991) (party has standing to quash a subpoena seeking the party's bank account information from non-party bank).

Although not all of the [subpoena] requests seek such information, the fact that some of them do is sufficient.").

**B. Plaintiffs Also Have Standing To Move For A Protective Order**

As an alternative to Rule 45(d), a party may seek a protective order pursuant to Rule 26(c). A protective order is properly issued to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," and may include one or more of the following directives: forbidding the discovery entirely; forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; and requiring that confidential information not be revealed or be revealed only in a specified way. Fed. R. Civ. P. 26(c)(A), (D), and (G). Courts have the power to grant protective orders for relief not specifically included in Rule 26, and may make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." *See* 8A Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. §2036 (3d ed). In analyzing a request for a protective order, courts conduct a proportionality assessment under Rule 26 resulting in the limitations on discovery becoming "more formidable as the showing of need decreases." *Id.* Thus, if there is minimal need for the non-party discovery sought, even a limited intrusion with respect to confidential or sensitive information may properly be found disproportionate and unreasonable, meriting the grant of a protective order.

**II. <u>The Subpoenas Should Be Quashed</u>**

Subpoenas must comply with Rule 26, including its relevance requirements. *See Hughes*, 327 F.R.D at 57; *During v. City Univ. of N.Y.*, 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006). Discovery is not relevant "where it is clear that the information sought has no possible bearing on claims and defenses of the parties." 6 Moore's Federal Practice: Civil § 26.42. The Subpoenas here do not seek information relevant to this case.

### A. The Bank Subpoenas Should Be Quashed

The Bank Subpoenas are completely objectionable. They do not seek information relevant to the claims or defenses in this case. They are thus a blatant fishing expedition calculated to obtain Plaintiffs' sensitive financial information and to harass and embarrass Plaintiffs. For example, despite defining the terms "2015 Agreement" and "2018 Agreement" in each of the Bank Subpoenas, not one of the 34 document requests in the Bank Subpoenas reference or pertain to either agreement, or the loan related to the 2018 Assignment Agreement. Ross Decl. Exs. A-D. Furthermore, not a single one of the document requests in the Bank Subpoenas reference or pertain to Alters. Ross Decl. Exs. A-D. Instead, the Bank Subpoenas seek "any and all" information covering a broad swath of topics concerning Plaintiffs' finances in general, banking relationships, loans, and information regarding other firms Morelli may have been associated with that are in no way connected to this litigation. The blunderbuss nature of the requests is obvious, as is the lack of connection to this case, as illustrated by the following requests:

- Produce any and all documents and communications evidencing, relating to, or establishing any and all loans between LawCash and Plaintiffs or any law firm which Benedict Morelli is a partner or shareholder, between 2010-2020. (Ross Decl. Ex. C, Req. No. 1).

- Produce any and all communications, documents, correspondence and the like evidencing any outstanding loans, involving Plaintiffs or any law firm which Benedict Morelli is a partner or shareholder, between 2010-2020. (*Id.*, Req. No. 5).

- Produce any and all communications, documents, correspondence and the like evidencing any current or prior loan transaction in which Plaintiffs or any law firm of which Benedict Morelli is a partner or shareholder, entered into with LawCash, including without limitation, all applications, warranties and representations, guarantees, personal guarantees, UCC filings, collateral, forecasts, loan agreements, and the like for the years 2010-2020. (*Id.*, Req. No. 7).

- Produce any and all documents and communications evidencing, relating to, or establishing any and all loan applications completed by Plaintiffs or any law firm which Benedict Morelli is partner or shareholders, between 2010-2020. (Ross Decl. Ex. B, Req. No. 2).

- Produce any and all documents submitted by Plaintiffs' in connections with any loan application between 2010 and 2020, including without limitation and any all applications, warranties and representations, guarantees, personal guarantees, UCC filings, collateral, forecasts, loan agreements, and the like. (*Id.*, Req. No. 3).

- Produce any and all documents and communications evidencing, relating to, or establishing any outstanding loans between 2010-2020. (*Id.*, Req. No. 8).

- Produce any and all documents and communications evidencing, relating to, or establishing any documents whereby Plaintiffs pledge any legal fees as collateral for repayment of any loans between 2010-2020. (*Id.*, Req. No. 9).

- Produce any and all documents and communications evidencing, relating to, or establishing any loan application completed by Plaintiffs or any law firm of which Benedict Morelli was partner or shareholder, to City National Bank ("CNB"), between the years 2010-2020. (Ross Decl. Ex. A, Req. No. 1).

- Produce any and all documents and communications evidencing, relating to, or establishing any loan approvals by CNB for any loan applications by Plaintiffs or any law firm of which Benedict Morelli was partner or shareholder, between the years 2008-2020. (*Id.*, Req. No. 2).

- Produce any and all documents provided by Plaintiffs or any law firm of which Benedict Morelli was partner or shareholder, relating to any application for a loan, including but not limited to security, warranties & representations, guaranty agreements, forecasts, and disclosures. (*Id.*, Req. No. 3).

The CNB Subpoena and Esquire Subpoena also seek financial information about loans having nothing to do with the allegations in the Complaint, nothing to do with the 2015 Agreement, and nothing to do with the 2018 Assignment Agreement, including, without limitation, the following:

- Produce any and all documents and communications relating to a certain loan from Esquire Bank in August 13 to Plaintiffs or any law firm which Benedict is a partner or shareholder, which loan was at least partially repaid in 2014. (Ross Decl. Ex. B, Req. No. 4).

- Produce any and all documents and communications evidencing, relating to, or bearing upon a certain July 2011 $10,000,000[] loan/credit line to Morelli Ratner P.C. guaranteed by Benedict Morelli and Arlene Morelli including, but not limited to forecasts, guarantees, applications, warranties and representations, security agreements, corporate documents. (Ross Decl. Ex. A, Req. No. 10).

- Produce the entire "closing binder" in relation to 2011 Loan. (*Id.*, Req. No. 11).

- Produce any and all documents and communications evidencing, relating to, or bearing upon any extensions of the 2011 loan, including but not limited to, forecasts, guarantees, applications, warranties and representations, security agreements, and corporate documents. (*Id.*, Req. No. 12).

- Produce any and all documents and communications evidencing, relating to, or bearing upon any payments by the borrower of the 2011 loan, from 2011 to present. (*Id.*, Req. No. 13).

The CNB Subpoena also impermissibly seeks every document related to Morelli's prior litigation with CNB -- arising from a loan dispute -- which has no connection of any kind to this action, including, without limitation, the following:

- Produce any and all documents and communications evidencing, relating to, or bearing upon any lawsuit between CNB and Plaintiffs or any law firm of which Benedict Morelli is a partner or shareholder, including without limitation, New York Supreme Court Cases with index numbers 158388/2014 and 652604/2014. (Ross Decl. Ex. A, Req. No. 7).

- Produce any and all discovery provided by Benedict Morelli, Arlene Morelli, and Morelli Ratner P.C. (the "Morelli Parties") in New York Supreme Court Cases with index numbers 158388/2014 and 652604/2014. (*Id.*, Req. No. 8).

- Produce any and all transcripts for depositions of Benedict Morelli, Arlene Morelli and Paul Zukowski [sic], taken in connection with the New York State Supreme Court Cases with index numbers 158388/2914 and 652604/2014. (*Id.*, Req. No. 9).

- Produce any and all documents bearing upon any communications between CNB and any member of Kasowitz Benson Torres LLP, in relation to Plaintiffs between 2008-2020. (*Id.*, Req. No. 5).

The Bank Subpoenas are also patently overbroad in that they seek "any and all" documents and communications going as far back as 2008, a decade before the only loan -- obtained in 2018 -- that is the subject of Plaintiffs' Complaint.

Thus, the Bank Subpoenas are completely irrelevant to the Complaint and Defendant's defenses. No allegations in the Complaint implicate Plaintiffs' financial records, banking records, or Plaintiffs' 2014 lawsuits with CNB. Plaintiffs' claims and allegations regarding the 2015 Agreement concern Alters' fraud which induced Plaintiffs to enter the agreement and are entirely

unrelated to Plaintiffs taking out loans or receiving funding or financing from any banking or financial institution, let alone CNB, Esquire or LawCash. (¶¶ 32-40). Plaintiffs allege Alters induced them into executing the 2015 Agreement by promising to give him portions of legal fees that he had no actual right to. (¶¶ 64-74). Plaintiffs do not allege that Alters fraudulently induced them into the 2015 Agreement because of representations regarding any purported general scarcity of lending or financing in 2015 or before. Although Plaintiffs briefly mention Alters was a credit risk, those allegations do not implicate Plaintiffs' finances. (¶¶ 30-31). Instead, as is clearly plead, Plaintiffs allege Alters was a credit risk as a result of the Florida Bar's ongoing investigation into his unethical conduct which later resulted in his disbarment. (*Id.*)

Similarly, Plaintiffs' fraudulent misrepresentation claim regarding the 2018 Assignment Agreement does not make the Bank Subpoenas relevant. The only financial information at issue is the loan Plaintiffs borrowed from YSLF as a result of Alters' recurrent lie that he was entitled to and could assign Plaintiffs more of his legal fees. (¶¶ 41-53). Alters' fraud as alleged does not implicate CNB, Esquire, LawCash, or Plaintiffs' general finances and borrowing practices. And while Alters is entitled to seek relevant discovery concerning the YSLF loan at issue, he can and has sought that discovery from Plaintiffs and a number of third-parties including Mr. Morelli's wife, Mr. Morelli's accountant, YSLF, SCMLF, and their legal counsel.

For all of these reasons, the Bank Subpoenas are irrelevant, intrusive, harassing and improper. They should be quashed.

**B. The Hirschfeld Subpoena Should Be Quashed**

While Alters' subpoena to Hirschfeld, the president and director of LawCash, appears more tailored to this action, that Subpoena too is improper because it is overly broad and largely duplicative of requests served in Alters' third-party subpoenas to SCMLF, YSLF, and their president and legal counsel. Though the subpoenas directed to those non-parties are overbroad

and likewise seek irrelevant discovery, Plaintiffs have not sought to quash them given their potential relevance: SCMLF and YSLF *were at least* involved in the 2018 Assignment Agreement and related loan. By contrast, Hirschfeld had no material involvement with Plaintiffs' claims, and thus the Subpoena to him is improper. The Hirschfeld Subpoena is also impermissibly overbroad for seeking "any and all" documents and communications related to any allegation in the Complaint. *See Hawkins v. Medapproach Holdings, Inc.*, 2014 WL 11350177, at *3 (S.D.N.Y. June 27, 2014) ("Movants need to do little to demonstrate the overbreadth of Plaintiff's Request . . . as this Request calls, in blanket fashion, for all documents concerning allegations in the Amended Complaint."); *Carvel v. Franchise Store Realty Corp.*, 2011 WL 13260780, at *3 (S.D.N.Y. June 16, 2011) (granting motion to quash subpoena where potentially relevant requests "are buried in larger, over-broad discovery demands that extend well beyond the claim being litigated here . . . ."). The Hirschfeld Subpoena should thus be quashed too.

## III. Plaintiffs Are Also Entitled to a Protective Order Barring The Bank Subpoenas and Hirschfeld Subpoena

In the alternative, Plaintiffs are entitled to a protective order barring the discovery sought in the Subpoenas. Under Rule 26(c), the Court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 72 (S.D.N.Y. 2010) (citation omitted). "It is impossible to set out in a rule all of the circumstances that may require limitations on discovery or the kinds of limitations that may be needed," and as such the Court "may be as inventive as necessities of a particular case require in order to achieve the benign purposes of the rule." 8A Wright, Miller, & Kane, Fed. Prac. & Proc. Civ. §2036 (3d ed). Courts in this Circuit are protective of information which may be subject to discovery because of its commercial value, especially where it can be demonstrated the disclosure of confidential information will place the disclosing or objecting party

at a competitive disadvantage. *See, e.g.*, *Solow*, 2008 WL 190340 at *1, *4-5 (declining to enforce subpoena for non-party asset and financial information).

A protective order is warranted here for all of the reasons that the Subpoenas should be quashed: the discovery sought is irrelevant, the subpoenas are intrusive seeking personal, confidential financial information, they are wildly overbroad and cover a decade's worth of banking records having no connection to this case, and they have been served to harass and embarrass among other improper motives. In addition, although Alters is a now disbarred former attorney, he works as a litigation consultant at a personal injury law firm which is engaged in mass tort cases as are Plaintiffs. Alters has no right to plaintiffs' financial information which he could use to plaintiffs' competitive disadvantage.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court quash the Subpoenas, pursuant to Fed. R Civ. P. 45(d)(3), or in the alternative, issue a protective order pursuant to Fed. R. Civ. P. 26(c), barring the discovery sought through the Subpoenas, and for such further relief as the Court deems just, fair and appropriate.

Dated: New York, New York
July 22, 2020

KASOWITZ BENSON TORRES LLP

By: /s/ David E. Ross

Marc E. Kasowitz
David E. Ross
Sondra D. Grigsby
1633 Broadway
New York, New York 10019
(212) 506-1700
mkasowitz@kasowitz.com
dross@kasowitz.com
sgrigsby@kasowitz.com

*Attorneys for Plaintiff*