USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/5/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BENEDICT P. MORELLI and THE MORELLI  :
LAW FIRM, PLLC, f/k/a Morelli Ratner, PC  :
                                                                                :
                                     Plaintiffs,  :       1:19-cv-10707-GHW
           -against-                                          :
                                                                                :      MEMORANDUM OPINION
JEREMY ALTERS,                                         :           AND ORDER
                                                                                :
                                 Defendant.  :
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

      Plaintiff Benedict Morelli and Defendant Jeremy Alters were once partners. Now, they are engaged in a sprawling litigation regarding the breakdown in their relationship, which Mr. Morelli asserts was founded on fraud. Mr. Alters has asked to make the litigation here all the more sprawling by moving to amend his counterclaims to add additional allegations against Mr. Morelli, and by engaging in a fishing expedition for evidence to support those new claims. Because Mr. Alters has not shown sufficient diligence to justify the addition of claims to the pleadings at this stage in the case, his motion to amend the pleadings is denied.

**I. MOTION TO AMEND**

    **A. Legal Standard**

      Under the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within 21 days of serving it or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). After that point, absent written consent from the opposing party, a party must obtain leave to amend from the district court. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) provides that courts "should freely give leave when justice so requires." "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party." *AEP*

*Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (citation omitted); *see also id.* ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.") (citation omitted).

The burden on a party seeking to amend the pleadings is heavier after the court has entered a case management order, however. At that point, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); see also *Cummins, Inc. v. New York Life Ins.*, No. 10-cv-9252 (TPG), 2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012) (holding that when "the court has already entered a scheduling order in the case, a party requesting leave to amend must satisfy the 'good cause' standard set forth in Rule 16(b)"). Thus, when "a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009), *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[We hold] that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."). The purpose of Rule 16(b) is "to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker*, 204 F.3d at 340 (quotation and citation omitted).

"[T]he primary consideration" to determine whether good cause exists "is whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). "The party moving to amend bears the burden of demonstrating good cause." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, No. 1:15-cv-2457 (GHW), 2019 WL 1245013, at *3 (S.D.N.Y. Mar. 18, 2019) (citing *Tchatat v. O'Hara*, No. 14-cv-2385 (LGS), 2017 WL 3172715, at *8 (S.D.N.Y. July 25, 2017); *Semple v. Eyeblaster, Inc.*, No. 08-cv-9004 (HB), 2009 WL 1748062, at *2 (S.D.N.Y. June 19, 2009)). "[T]he moving party must demonstrate that it has been diligent in its efforts to

2

meet the Court's deadlines, and that despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Id.* (quoting *Lee v. Kylin Management LLC*, No. 17-cv-7249 (JMF), 2019 WL 917097, at *1 (S.D.N.Y. Feb. 25, 2019)). "A party cannot make that showing 'when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline.'" *Lee*, 2019 WL 917097, at *1 (citation omitted). It follows that "[a] party is not diligent where the information motivating the request to file an amended complaint was previously available to the public." *Verint*, 2019 WL 1245013, at *4 (citing *Separzadeh v. Iconix Brand Grp., Inc.*, No. 15-cv-8643 (AT) (JCF), 2016 WL 6126386, at *2 (S.D.N.Y. Oct. 19, 2016); *De Malmanche v. Glenrock Asset Mgmt. Assocs. L.P.*, No. 07-cv-10940 (KNF), 2011 WL 990165, at *5 (S.D.N.Y. March 16, 2011)).

Diligence is not the only consideration. "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the opposing party]." *Kassner*, 496 F.3d at 244. "In determining what constitutes 'prejudice' courts consider whether the assertion of a new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Verint*, 2019 WL 1245013, at *5 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). "[T]he risk of substantial prejudice increases with the passage of time." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) (quotation and citation omitted).

### B. Application

#### 1. Timeliness

Alters' motion for leave to amend is denied because he failed to meet the deadlines in the Court's case management plan and he has not shown that he acted with diligence. The deadline for the parties to amend the pleadings was March 11, 2020. See Case Management Plan, Dkt No. 38,

3

¶ 4.  On May 22, 2020, the parties proposed a revised case management plan that extended the deadlines to complete discovery.  Dkt No. 70.  That proposal did not include a new deadline to amend the pleadings.  The Court entered the revised case management plan on May 26, 2020.  Dkt No. 71.  Alters did not seek leave to amend its counterclaims until July 16, 2020.  Dkt No. 80.

Alters' excuses for his delay are unconvincing.  Alters primarily relies on facts that he concedes have been publicly available since the start of this lawsuit.  Specifically, Alters points to alleged improprieties that were uncovered in Morelli's litigation against City National Bank and a settlement Morelli negotiated on behalf of actor Tracy Morgan.  But Alters does not say that he learned any of the new facts supposedly underlying these claims in discovery.  To the contrary, he admits that all these facts were publicly available.  And "[a] party is not diligent where the information motivating the request to file an amended complaint was previously available to the public."  *Verint*, 2019 WL 1245013, at *4 (citations omitted).

Alters says that he "had no reason to suspect anything was amiss" until he began to investigate the factual basis for Morelli's claims.  Mem. Supp. Mot. for Leave to Amend, Dkt No. 91 at 11.  That argument doesn't make sense on its own terms.  Presumably Alters had (or should have had) an inkling that something was amiss when Morelli sued him (baselessly, according to Alters).  For that reason, Alters' citation of *City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011), which addresses when a party can be deemed to be on inquiry notice of a fact for purposes of the statute of limitations, is unpersuasive, even by analogy.  A reasonably diligent defendant would be motivated to understand if she had counterclaims against a plaintiff when she was sued by the plaintiff.  And that is especially true after the court has entered a case management plan that sets a firm deadline for amendment of the pleadings.  Alters knew that there was a deadline to file his counterclaims, so any reasonably diligent litigant in his shoes would have investigated publicly available information about Morelli to see if he had viable counterclaims.  There is no exception to the rule that a party cannot demonstrate diligence by relying on information that was

4

already publicly available when the party claims it had no reason to believe that anything was "amiss."

Alters' other arguments are also unconvincing. Alters notes that the parties have been busy litigating this case and moving the case forward in arbitration. Mem. Supp. Mot. Leave to Amend at 8–9. True enough, but if there was too much else going on in the litigation for Alters to file his counterclaims, he could have sought an extension of the deadline to amend the pleadings. Instead, he pointedly did not seek to extend that deadline, even while seeking an extension of other discovery deadlines. Alters also notes that the initial deadline for the parties to amend the pleadings came before the Court ruled on Alters' motion to dismiss and to compel arbitration of all claims. *Id.* at 9. True again, but that again does not explain why Alters did not seek to extend the deadline. The Court issued its opinion on the motion to compel arbitration on May 8, 2020. Dkt No. 67. Yet Alters waited two and a half months to seek leave to amend the pleadings. If Alters had moved reasonably promptly after the Court issued its opinion on the motion to compel arbitration, the Court's might reach a different conclusion. But Alters has not explained his delay in seeking leave to amend—and that delay is significant. *See Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) ("The district court acted well within its discretion in concluding that plaintiffs' three-month failure to move for amendment after learning [the information] failed to demonstrate the diligence necessary to satisfy Rule 16.").

### 2. Prejudice

Permitting Alters to add his counterclaims at this stage would also prejudice Morelli. The new counterclaims would risk "significantly delay[ing] the resolution of the dispute" because the parties would likely be required to engage in extensive motion practice to test the sufficiency of the new claims. *Block*, 988 F.2d at 350. The new counterclaims would also require some expansion of discovery. To be sure, the parties dispute just how much extra discovery would be required. But some extra discovery would inevitably result as the parties sought to explore the new counterclaims.

The prejudice to Morelli of permitting Alters to amend his counterclaims is not overwhelming. Standing alone, it would likely not be enough to require denial of Alters' motion to amend. But together with Alters' lack of diligence, it bolsters the Court's conclusion that Alters' motion to amend should be denied.

As Alters has failed to satisfy Rule 16(b)'s good cause standard, the Court need not address Morelli's arguments under Rule 15(a)(2) that the proposed amendments are futile or made in bad faith. Because Alters has not shown diligence and Morelli will be prejudiced, Alters' motion to amend is denied.

## II. MOTION TO QUASH

### A. Legal Standard

Federal Rule of Civil Procedure 45(a)(1) permits a party to serve a subpoena on a non-party to produce documents. *See* Fed. R. Civ. P. 45(a)(1). "Under Rule 45(d), the subpoena recipient may move to quash or modify the subpoena if it '(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.'" *In re Subpoena to Loeb & Loeb LLP*, No. 19-mc-241 (PAE), 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019) (quoting Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv)).

"Parties generally do not have standing to object to subpoenas issued to non-party witnesses. *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018) (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975)). But there is an exception for "parties who have a claim of some personal right or privilege with regard to the documents sought." *Id.* (quoting *Meyer Corp. U.S. v. Alfay Designs, Inc.*, No. 10-cv-3647 (CBA) (MDG), 2012 WL 3537001, at *1 (E.D.N.Y. Aug. 14, 2012)); *see also Estate of Ungar v. Palestinian Auth.*, 332 F. App'x 643, 645 (2d Cir. 2009) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to

6

the documents sought." (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2008))). "Examples of such personal rights or privileges include the personal privacy right and privilege with respect to the information contained in psychiatric and mental health records, claims of attorney-client privilege, and other privacy interests, including those relating to salary information and personnel records." *Hughes*, 327 F.R.D. at 57 (quoting *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. 12-cv-6383 (JFB) (AKT), 2017 WL 1133349, at *5 (E.D.N.Y. Mar. 24, 2017)) (brackets omitted).

"On a motion to quash, 'the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Loeb*, 2019 WL 2428704, at *4 (quoting *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03-cv-1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)) (brackets omitted); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2020) ("[T]he movant has the burden of persuasion on a motion to quash a subpoena."). "A subpoena that pursues material with little apparent or likely relevance to the subject matter is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Loeb*, 2019 WL 2428704, at *4 (quoting *Kirschner v. Klemons*, No. 99-cv-4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005)) (ellipsis omitted); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2020) ("Although a subpoena may be quashed if it calls for clearly irrelevant matter, the district judge need not pass on the admissibility of the documents sought in advance of trial nor quash a subpoena demanding their production if there is any ground on which they might be relevant." (footnotes omitted)).

"The relevance standards set out in Federal Rule of Civil Procedure 26(b)(1) apply to discovery sought from non-parties." *Loeb*, 2019 WL 2428704, at *4 (citing *Citizens Union of City of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017)).

7

> Rule 26(b)(1) provides that: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

*Id.* (quoting Fed. R. Civ. P. 26(b)(1)); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2020) ("[T]he scope of discovery is not limited to matters that are admissible or relevant to the issues formulated in the case but extends to any nonprivileged matter that is relevant to the claim or defense of any party in the pending action."). "The party seeking discovery bears the initial burden of proving the discovery is relevant." *Loeb*, 2019 WL 2428704, at *4 (quoting *Citizens Union of City of N.Y.*, 269 F. Supp. 3d at 139).

"If the party issuing the subpoena establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden." *Id.* (citing *Griffith v. United States*, No. M8-85 (JFK), 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007)). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* (quoting *Night Hawk*, 2003 WL 23018833, at *8). "The trial court has broad discretion to determine whether a subpoena imposes an undue burden." *Id.* (citing *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003)).

### B. Application

#### 1. Standing

Morelli has standing to challenge the subpoenas. Morelli has a personal privacy interest in his bank records. *See, e.g.*, *Arias-Zeballos v. Tan*, No. 06-cv-1268 (GEL) (KNF), 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) (concluding that a movant had standing to quash subpoena issued to third-party banks based on the movant's "privacy interest in [his] financial affairs"). Alters concedes

8

that "the weight of jurisprudence in this Circuit" has concluded that individuals have such an interest. Opp. to Mot. to Quash, Dkt No. 88 at 11 n.8.

Because the subpoenas seek financial records that implicate Morelli's personal privacy interest, he has standing to challenge the non-party subpoenas. The Bank Subpoenas seek information involving "Plaintiffs or any law firm of which Benedict Morelli is a partner or shareholder." Ross Decl. Ex. A, Request No. 1. The Bank subpoenas define "Plaintiffs" to include Morelli. The Hirschfield Subpoena similarly seeks "any and all documents bearing upon any communications between you and Benedict Morelli regarding any loan transactions, funding, collateral, prior loans and the like regarding Plaintiffs, or any law firm of which Benedict Morelli is a shareholder or partner." Ross Decl. Ex. D, Request No. 25. Courts in this district have found standing for similar subpoenas. *Solow v. Conseco, Inc.*, No. 06-cv-5988 (BSJ) (THK), 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008) ("The subpoena at issue here seeks information relating to the terms of all financing, refinancing, loans and debt obligations that Macklowe has incurred with respect to the GM Building. This proprietary information, which is often contained in bank records, is not publicly available, and Macklowe clearly has a privacy interest in maintaining the confidentiality of the information.").

Alters' arguments to the contrary are unavailing. Alters first argues that the subpoenas are "directed at law firms, not toward Morelli's personal financial affairs." Opp. to Mot. to Quash at 12. But even accepting that characterization, the question is not where the subpoenas are directed but whether Morelli has some personal right or privilege with regard to the documents sought. He does, so Alters' argument is unconvincing. Alters also argues that the subject matter sought by the subpoenas is more like a credit card statement than a bank statement. *Id.* at 12–13. This is a curious argument because Alters cites no case that has found that a party lacks standing to challenge the release of her credit card statements. In any event, "the inquiry courts apply is whether the information itself is private, confidential, privileged, or highly sensitive, and not the form the records

9

take." *Solow*, 2008 WL 190340, at *4 (citations omitted).  The information sought by the Subpoenas is private and may be sensitive, so Morelli has standing to challenge the Subpoenas.

### 2. Merits

Three of the proposed subpoenas should be quashed.  Alters has requested a broad swath of information from three separate financial institutions:  City National Bank, Esquire Bank, and Funding Holding Inc. d/b/a LawCash ("LawCash").  The subpoenas issued to these three financial institutions seek information regarding Plaintiffs' finances over an extended period of time.  These subpoenas have little, if any, relevance to the single loan at issue in Plaintiff's case.  Indeed, Defendant recognizes that this set of subpoenas "support Alters' own affirmative claims against Morelli."  Opp. to Mot. to Quash at 2 n.1.  However, the Court has just denied leave to amend the pleadings to add those claims to this case.

The requests made in these subpoenas are also exceedingly overbroad.  Plaintiffs have illustrated this issue in their memorandum of law.  Mem. Supp. Mot. to Quash, Dkt No. 85 at 7–8.  A few brief excerpts here demonstrate the overbreadth of these requests:

- Produce any and all documents and communications evidencing, relating to, or establishing any and all loans between LawCash and Plaintiffs or any law firm which Benedict Morelli is a partner or shareholder, between 2010–2020. (Ross Decl. Ex. C, Req. No. 1).

- Produce any and all communications, documents, correspondence and the like evidencing any outstanding loans, involving Plaintiffs or any law firm which Benedict Morelli is a partner or shareholder, between 2010-2020. (*Id.*, Req. No. 5).

- Produce any and all communications, documents, correspondence and the like evidencing any current or prior loan transaction in which Plaintiffs or any law firm of which Benedict Morelli is a partner or shareholder, entered into with LawCash, including without limitation, all applications, warranties and representations, guarantees, personal guarantees, UCC filings, collateral, forecasts, loan agreements, and the like for the years 2010–2020. (*Id.*, Req. No. 7).

These requests are substantially overbroad.  And given the sweeping nature of their request for information of tangential relationship to Plaintiff's claims in this case, the three subpoenas to

10

financial institutions are the epitome of the classic "fishing expedition." They seem to be issued for the purpose of harassment, and, to the extent they seek any relevant information, are disproportionate to the needs of the case. They should be quashed.

The subpoena directed to Mr. Hirschfield need not be limited at this time. As Plaintiffs note, this subpoena "appears more tailored to this action." Mem. Supp. Mot. to Quash at 10. And on its face, it is. While the scope of the requests made in the Hirschfield subpoena could be viewed as overbroad, the Court expects that Hirschfield and Alters will engage in a process to negotiate reasonable limitations on the scope of the subpoena and the burden associated with it. In the event that they are unable to come to an accord, the Court is available to resolve any remaining disputes.

**III. CONCLUSION**

Because Alters has not shown good cause to extend the deadline for amendments to the pleadings in this case, his motion to amend his answer is DENIED. Plaintiffs' motion to quash Alters' subpoenas is GRANTED IN PART and DENIED IN PART. The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 84 and 90.

SO ORDERED.

Dated: November 5, 2020
New York, New York

_____
GREGORY H. WOODS
United States District Judge

11